IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | |
|---|---|
| TREVOR BARNES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CV 116-015 |
| | ) |
| CAPTAIN BRETT CARANI, et al., | ) |
| | ) |
| Defendants. | ) |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

*Pro se* Plaintiff, a former inmate at Columbia County Detention Center ("CCDC"), commenced this case alleging Defendants violated his religious rights by refusing to provide him with his requested diet. (Doc. no. 1.) Before the Court is Defendants' motion for summary judgment. (Doc. no. 30.) For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** the motion for summary judgment be **GRANTED** (id.), this case be **DISMISSED**, and this civil action be **CLOSED**.

**I. FACTS**

Plaintiff's opposition memorandum details the tenets of the Nazarite Judaic religion cites exclusively to documentary evidence produced by Defendants when attempting to shoe a constitutional violation. (Doc. no. 36.) Plaintiff did not submit his own evidence in support as instructed, nor does he contest Defendants' Statement of Undisputed Material Facts. (See generally id.) He merely contests the constitutionality of the actions detailed by Defendants

and their assertion his religious beliefs are insincere. (Id.) Therefore, all of Defendants' fact statements not opposed by Plaintiff and supported by the evidentiary record are deemed admitted. See Loc. R. 56.1; Fed. R. Civ. P. 56(e); see also Williams v. Slack, 438 F. App'x 848, 849-50 (11th Cir. 2011) (finding no error in deeming defendants' material facts admitted where *pro se* prisoner failed to respond with specific citations to evidence and otherwise failed to state valid objections); Scoggins v. Arrow Trucking Co., 92 F.Supp.2d 1372, 1373 n.1 (S.D. Ga. 2000) (same).

On March 5, 2014, the Columbia County Sheriff's Office ("CCSO") arrested Plaintiff on charges of aggravated child molestation, rape, aggravated sexual battery and reckless conduct by an HIV infected person. (Doc. no. 32-1, Ex. A, p. 185:23-186:19 (hereinafter "Pl. Depo."); doc. no. 32-3, Ex. C ¶ 6 (hereinafter "Woods Decl."); Id., Ex. C-1.) They transported Plaintiff to CCDC, where he went through an intake process involving multiple questions and property collection. (Pl. Depo, p. 187:5-197:20.) At the completion of the intake process, CCDC generated a booking report listing his religion as Christian and containing no dietary restrictions. (Woods Decl. ¶ 6, Ex. C-1.) Plaintiff concedes he did not notify anyone at CCDC of any dietary restrictions during the intake process because "they didn't ask at all." (Pl. Depo., p. 197:14-197:20.)

On March 8, 2014, Plaintiff submitted two inmate requests. (Woods Decl. Ex. C-2.) The first stated, "I am a vegetarian and would like to receive only vegetarian food trays." (Id.) Plaintiff submitted the second on a grievance form entitled "On the Medical Staff," stating he informed the medical staff he is vegetarian. (Id.) CCDC staff denied his first

request on March 14, 2014 on the ground CCDC does not offer vegetarian food trays, and the CCDC medical deputy denied his medical grievance on the ground vegetarian diets are not a medical issue. (Id.)

On March 14, 2014, Plaintiff submitted another inmate request form stating the following:

> I put in a request to receive a vegetarian tray because I do not eat any meat. I was given a reply back stating that "The Detention Center does not provide vegetarian trays, all vegetable trays are by choice and not provided." It is not by choice that I'm not allowed to consume any meats. I am a scientologist by religion and our denomination prohibit[s] the consumption of meats we are vegans. So can you give me some input on how I can get them stated [sic]. Thank you for your time.

(Id.) Deputy Willis denied the request because, based on the Scientology website, there are no dietary restrictions for scientologists. (Id.)

On July 26, 2014, Plaintiff submitted a medical inmate request form, complaining his "meals were labeled double portion, but have [sic] yet to reap the actual quantity it is supposed to have." (Id.) He also noted he was not receiving the afternoon snacks he was supposed to receive. (Id.) Deputy Willis responded on July 28, 2014, that she was not aware Plaintiff was supposed to receive double portions or a snack, but she would check with the CCDC doctor and continue Plaintiff's weight checks. (Id.)

On February 9, 2015, Plaintiff submitted another inmate request form, this time directly to Lt. Woods, stating:

> Hello sir; the reason for my submitting this request is to hopefully get a matter resolved as soon as possible. Due to my unconditional love and devotion to my Lord and Saviour [sic] Jesus Christ. My faith has led me to separate myself unto the Lord as a Nazarite. Meaning I am no longer allowed to

3

consume anything made of the vine such as grapes, etc. from the kernels even to the husk. So that includes any and everything that includes corn or corn product and I am not to shave my head either. I'm hoping that you all could at least honor this part of my freedom of religion because I have already been denied my right of religion [sic] practice when this facility wouldn't honor my not consuming any meats (flesh) still today it's not being honored. I decided to write this to you because I've come to grips that Ms. Willis isn't of the cloth and I believe that you do have God in you. Thank you for your time and have a nice day! Keep God 1st.

(Id.) As Plaintiff acknowledges, CCDC officials approved this first request. (Pl. Depo, p. 199:6-12.)

On February 17, 2015, Plaintiff submitted an amended request for a religious diet. In this request, he stated he "didn't realize that grapes aren't the only thing of the vine tree I'm not allowed to eat. It's all things made of the vine tree meaning: cucumbers, green or sweet peas, grapes, tomatoes, ketchup and any byproduct to the tomato tree . . . ." (Woods Decl., Ex. C-2.) Plaintiff claimed the reason for this amended request was "[my] spiritual comforter spoke with me as last night as I slept with this guide to follow. If I am alerted to other things by revelation I will be sure to give you an update . . . ." (Id.; see also Pl. Depo., pp. 183:11-185:22.) After investigating the basis for Plaintiff's request and consulting with Defendant Captain Brett Carani, Lt. Woods denied the amended request on February 18, 2015. (Woods Decl., Ex. C-2; Doc. no. 32-4, Ex. D (hereinafter "Carani Decl.") ¶ 5.) Lt. Woods explained the biblical dictates of the Nazarite vow concerns consuming anything from the "grapevine," not all vines. (Woods Decl., Ex. C-2.) In response, on February 18, 2015, Plaintiff submitted another inmate request form asserting his right to eat nothing made of the "vine tree." (Id.)

On March 13, 2015, Plaintiff submitted a grievance disagreeing with Lt. Woods' response to his amended Nazarite request, which was forwarded to jail administration. (Id.; Carani Decl. ¶ 5.) On March 14, 2015, Plaintiff submitted a similar grievance, adding his religious accommodation as a Nazarite included not being able to consume meat. (Woods Decl., Ex. C-2.) On March 22, 2015, Plaintiff submitted a grievance addressed "To the Commander of the Columbia County Detention Center: Captain Carani" wherein he claimed the following:

> Due to my religious practice; I consume not any meat or meat products. Because I view meats to be a stumbleth [sic] block for my brethren. It is good neither to eat flesh, (meaning meat) nor to drink wine, nor anything whereby thy brother stumbleth [sic] or is offended or made weak. You can find that in the book of Romans 14:21. I've submitted countless amounts of inmate request forms and grievances alike regarding this since March 8, 2014 and to my disbelief none of my appeals to get my diet adjusted accordingly have been honored . . . .

(Id.) Defendant Carani denied Plaintiff's request and informed him he had exhausted his administrative remedies. (Id.) Plaintiff left the CCDC on April 30, 2015. (Doc. 1, p. 5.)

Defendants testified granting Plaintiff's individualized diet request would cause disruption and possible violence among inmates as well as place a financial burden on the operations of CCDC. (Woods Decl. ¶¶ 10-13; Carani Decl. ¶¶ 9-12; doc. no. 32-2, Ex. B (hereinafter "Whittle Decl.") ¶ 13.) CCDC has received no federal funding since 1995, and received no such funding during Plaintiff's time of incarceration there. (Whittle Decl. ¶¶ 9-10.)

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Id. at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross,

663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (quoting Adickes, 398 U.S. at 158-59). A genuine dispute as to a material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

### B. RLUIPA Standard

Plaintiff's claims are based on alleged violations of the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc *et seq.* ("RLUIPA"). (See doc. no. 1; doc. no. 9, p. 2.) RLUIPA provides the following:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. 2000cc–1.

To establish a prima facie case under RLUIPA, a plaintiff must demonstrate (1) he engaged in a religious exercise; and (2) the religious exercise was substantially burdened. Smith v. Allen, 502 F.3d 1255, 1276 (11th Cir. 2007) abrogated on other grounds by Sossamon v. Texas, 563 U.S. 277 (2011). If a plaintiff makes such a showing, the government must then demonstrate that imposition of the burden or refusal to accommodate a plaintiff's belief furthers a compelling government interest by the least restrictive means.

7

42 U.S.C. § 2000cc–1(a); 42 U.S.C. § 2000cc–2(b). "[I]f the plaintiff fails to present evidence to support a prima facie case under RLUIPA, the court need not inquire into whether the governmental interest at stake was compelling." Smith, 502 F.3d at 1276; see also Benning v. Georgia, 845 F. Supp. 2d 1372, 1376-77 (M.D. Ga. 2012).

RLUIPA defines "religious exercise" broadly to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. 2000cc-5(7). However, "the Act does not preclude inquiry into the sincerity of a prisoner's professed religiosity." Cutter v. Wilkinson, 544 U.S. 709, 725 n.13 (2005); see also Williams v. Sec'y for Dep't of Corr., 131 F. App'x 682, 685 (11th Cir. 2005) ("When assessing whether a prisoner was deprived of his constitutionally protected right to freely practice his religion, we have held that the district court must first 'determine whether the prisoner is sincere in his or her asserted religious beliefs.'") (quoting Martinelli v. Dugger, 817 F.2d 1499, 1503 (11th Cir. 1987)).

### C. Plaintiff's Claims for Declaratory and Injunctive Relief Are Moot.

Plaintiff asks the Court for declaratory and injunctive relief that compels CCDC to "provide the religious food" required by many different religions. (Doc. no. 1, p. 8.) Defendants respond this claim is moot because Plaintiff has been moved from CCDC and is in the custody of the Georgia Department of Corrections. (Doc. no. 32, pp. 13-14.)

Article III of the Constitution limits the jurisdiction of the federal courts to the consideration of 'Cases' and 'Controversies.'" Mingkid v. U.S. Att'y Gen., 468 F.3d 763, 768 (11th Cir.2006) (citation omitted). "The doctrine of mootness derives directly from the

case-or-controversy limitation, because an action that is moot cannot be characterized as an active case or controversy." Id. (citation omitted). A case is moot when it no longer presents a live controversy for which the court can provide meaningful relief. Id. The general rule in the Eleventh Circuit is that a transfer or release of a prisoner from prison will moot that prisoner's claims for injunctive and declaratory relief. McKinnon v. Talladega Cty., Ala., 745 F.2d 1360, 1363 (11th Cir. 1984).

Because Plaintiff has long been transferred from CCDC and no longer resides there, providing religious diets to inmates at CCDC would afford him no relief and would only serve to benefit far removed third parties. Cf. Smith, 502 F.3d at 1268. Accordingly, Plaintiff's claims for declaratory and injunctive relief are moot.

### D. Defendants Are Entitled to Summary Judgment on Plaintiff's Individual Capacity Claims.

It is well established RLUIPA does not create a private action for money damages against officials sued in their individual capacities. Hathcock v. Cohen, 287 F. App'x 793, 798 (11th Cir. 2008); Smith, 502 F.3d at 1275. Therefore, Defendants are entitled to summary judgment on Plaintiff's individual capacity claims.

### E. Defendant Cross Is Entitled to Summary Judgment in His Official Capacity.

Plaintiff's official capacity claim against Defendant Cross is in essence a claim against Columbia County because he is Chairman of the Columbia County Commission. Because Columbia County has no responsibility for the actions of CCSO, nor can it exercise authority or control over CCSO, Defendant Cross cannot be held liable for any of CCSO's

actions.

As the Eleventh Circuit has explained,

> In Georgia, a county has no authority and control over the sheriff's law enforcement function. [It] does not, and cannot, direct the Sheriff how to arrest a criminal, how to hire, train, supervise, or discipline his deputies, what polices to adopt, or how to operate his office . . . . Instead, the sheriff acts on behalf of the State in his function as a law enforcement officer and keeper of the peace . . . ."

Grech v. Clayton Cty., Ga., 335 F.3d 1326, 1347 (11th Cir. 2003). Moreover, in Lake v. Skelton, the Eleventh Circuit specifically held deputy sheriffs are acting under state, not county, authority when they deny an inmate's dietary request. 840 F.3d 1334, 1342 (11th Cir. 2016); see also Manders v. Lee, 338 F.3d 1304, 1317 n.30 (11th Cir. 2003) ("duties of sheriffs in Georgia are governed by the State and not by county governing bodies"). Accordingly, Defendant Cross, in his official capacity as Chairman of the Columbia County Board of Commissioners, cannot be held liable for the denial of Plaintiff's religious diet, and is therefore entitled to summary judgment on Plaintiff's claims.

### F. RLUIPA Does not Apply to Defendants Carani, Woods, and Whittle in Their Official Capacities Because the CCDC Does Not Receive Federal Funds.

Defendants Carani, Woods, and Whittle are not subject to RLUIPA in their official capacities because the CCDC receives no federal funding. RLUIPA applies where "(1) [a] substantial burden is imposed in a program or activity that receives Federal financial assistance; or (2) [a] substantial burden affects, or removal of that substantial burden would affect, commerce with foreign nations, among the several States, or with Indian tribes." 42 U.S.C. § 2000cc-1(b). In the present case, interstate, international, and Indian commerce are

not implicated. Therefore, Plaintiff must "show that the alleged burden on his religious exercise was 'imposed in a program or activity receiving federal funding.'" Kramer v. Conway, 962 F. Supp. 2d 1333, 1344 (N.D. Ga. 2013) (quoting McCree v. Pocock, No. 1:06-CV-1279-TWT, 2007 WL 1810143, at *2 (N.D. Ga. June 19, 2007)).

Plaintiff fails to make the required showing here. Sheriff Whittle testified by affidavit, and Plaintiff does not dispute, CCDC stopped receiving federal funds shortly after he became Sheriff in 1995, and received no federal assistance in 2014 or 2015. Whittle Decl. ¶¶ 8, 9. Accordingly, because CCDC does not receive any federal funding, Defendants Carani, Woods, and Whittle are not subject to RLUIPA in their official capacities as employees of CCDC and are entitled to summary judgment. See Davila v. Marshall, No. CV 112-149, 2015 WL 272593, at *4 n.3 (S.D. Ga. Jan. 20, 2015), aff'd on other grounds, 649 F. App'x 977 (11th Cir. 2016) (granting summary judgment to defendants on RLUIPA claim where jail received no federal funding); Schneider v. Ferguson, No. CV 305-158, 2007 WL 1521610, at *13 (S.D. Ga. May 23, 2007) (same); see also Kramer, 962 F. Supp. 2d at 1344 ("[Plaintiff]'s failure to present any evidence that the Jail receives federal funds precludes relief under RLUIPA.").

### G. Even If Defendants Carani, Woods, and Whittle Were Subject to RLUIPA, They Are Entitled to Eleventh Amendment Immunity in Their Official Capacities on Plaintiff's RLUIPA Claims.

Even if Defendants Carani, Woods, and Whittle were subject to the provisions of RLUIPA, they would still be entitled to summary judgment because they are immune from suit. "The Eleventh Amendment insulates a state from suit brought by individuals in federal

court unless the state either consents to suit or waives its Eleventh Amendment immunity." Stevens v. Gay, 864 F.2d 113, 114 (11th Cir. 1989) (citing Pennhurst State School and Hosp. v. Halderman, 465 U.S. 89, 98-100 (1984)) (internal footnote omitted). The Supreme Court has held "States, in accepting federal funding, do not consent to waive their sovereign immunity to private suits for money damages under RLUIPA because no statute expressly and unequivocally includes such a waiver." Sossamon, 563 U.S. at 293. Thus, sovereign immunity applies in the RLUIPA context.

Eleventh Amendment immunity applies not only to states, but also to defendants who are "acting as an 'arm of the State,' which includes agents and instrumentalities of the State." Manders, 338 F.3d at 1308 (citation omitted). "[A]cting as an 'arm of the State'" must be determined "in light of the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise." Id. (citation omitted). To make this determination, the Eleventh Circuit has developed a four-factor test: "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." Id. (citations omitted).

In Lake v. Skelton, the Eleventh Circuit held sovereign immunity extends to a deputy sheriff who denied a county jail inmate's religious dietary request. 840 F.3d at 1336. Plaintiff's claims here fall squarely within the purview of Lake; indeed, they are almost identical. Therefore, Defendants Carani, Woods, and Whittle, as Sheriff and Deputy Sheriffs, are entitled to sovereign immunity from Plaintiff's religious diet claims for

monetary damages. Id. at 1336, 1344.

Nor can Plaintiff receive any other non-monetary relief. As discussed *supra*, see § III.B., Plaintiff's claims for injunctive and declaratory relief are moot due to his transfer from CCDC. Moreover, as there is no ongoing violation, any nominal or declaratory relief would be retrospective and thus also barred by Eleventh Amendment immunity. See Green v. Mansour, 474 U.S. 64, 68 (1985) (holding no exception to Eleventh Amendment immunity applies to claims for retrospective relief); Pennhurst, 465 U.S. at 103 (same). Accordingly, Defendants Carani, Woods, and Whittle are entitled to summary judgment on Plaintiff's claims.

### H. Even If Plaintiff Could Maintain a RLUIPA Claim, He Does Not Have A Sincere Religious Belief.

Under RLUIPA, "prison officials may appropriately question whether a prisoner's religiosity, asserted as the basis for a requested accommodation, is authentic." Cutter, 544 U.S. at 725 n.13. Even if RLUIPA did apply to Defendants, Plaintiff could not prevail on his RLUIPA claim because the undisputed facts show he does not have a sincerely held religious belief.

Plaintiff changed his alleged religious beliefs multiple times throughout his time at CCDC. During intake, Plaintiff told CCDC officials he was a Christian. (Woods Decl. ¶ 6, Ex. C-1.) After he was denied a vegetarian meal as a medical requirement, Plaintiff then represented he was a Scientologist and as such required a vegan meal. (Woods Decl. Ex. C-2.) After he was denied a vegan diet as a Scientologist, he finally alleged he was a Nazarite Jew, requiring that he not eat food from the vine. (Id.) After being granted his first Nazarite

13

request, Plaintiff alleged his "spiritual comforter" informed him in his sleep that his religion required a vegetarian diet and other restrictions. (Id.) Although Plaintiff claims he changed his purported beliefs so often because he was afraid of discrimination against his Nazarite Jewish religion, Plaintiff admitted several of his requests were "clever ideas . . . to get the diet established" and false. (Pl. Depo. p. 167.) Under such circumstances, it was reasonable for prison officials to believe Plaintiff's religious beliefs were not authentic or sincere, and did not have to accommodate those ever-changing beliefs under RLUIPA. Cutter, 544 U.S. at 725 n.13. Indeed, no reasonable juror could find, based on the undisputed facts above, that Plaintiff's religious beliefs were sincere.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendants' motion for summary judgment be **GRANTED** (doc. no. 30), this case be **DISMISSED**, and this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 2nd day of February, 2018, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA